The Honorable Judges of the United States Court of Appeals in and for the Southern Judicial Circuit. Period. Period. Period. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning everyone. Good morning. Good morning Judge Rovner. Good morning. We're here today for the first sitting of the 133rd year of this Court, I understand. Since 1891 and this will be the first panel that will hear cases. I did a little bit of history work and I found out that the only business that they handled at that first hearing was the decision to wear robes on the bench. I remember it well. Excellent. Well, we have also the honor of Mr. Newhall and Mr. Glazer. You'll be giving the first arguments of the year. So thank you. We're going to begin with the first case 23-1557 United States v. Todd Sheffler and Mr. Newhall will hear from you first. Good morning, Your Honors, and may it please the Court, Jeremiah Newhall for Todd Sheffler. I want to begin today by talking about the sufficiency of the evidence argument in this case. I want to begin by talking about counts 3 and 5 because count 4, as the government pointed out in its brief, has some additional hurdles for us to clear. It won't matter if I clear those hurdles if you don't agree with me on counts 3 and 5 because it's going to be the same evidence that needs to be sufficient for all of them. So looking first at counts 3 and 5, those counts were plainly insufficient to prove beyond a reasonable doubt that there was at least a reasonable likelihood at the time that Mr. Sheffler made statements and wrote his report, the statements were made to Illinois State Police, the report was a state correctional form that he filled out, there was no reasonable likelihood that those statements would reach any federal officer. Ms. Smith, forgive me Mr. Newhall, but do you think that we can assume that a correctional officer who's been employed at a prison for 18 years has seen at least one other federal investigation of inmate or guard behavior? No, Judge Rovner, I don't think we can assume that because it's not in evidence. I don't think that the jury could assume that because while this court might make that inference based on the experience, as your experience as learned judges, the jurors don't have that experience to draw upon or that knowledge of the correctional system. That wasn't presented into evidence that an experienced correctional officer would have that knowledge. There was no evidence put in on that. So also I want to take a step back and it's not necessarily about Mr. Sheffler's subjective understanding. It's an objective test about whether there was a reasonable likelihood there would be a federal investigation. So it's not whether he knew there would be a federal investigation under the test as this court has set it forth and as the Supreme Court has set it forth. It's whether there was just evidence from which the jury could conclude that at that point it was objectively reasonably likely to be federal. And the evidence that the prosecution has pointed to in its brief is the same evidence that the defense said would be the government's best evidence. Both sides in their briefs cite the statement of an FBI agent on the stand that, quote, we work with state and locals a lot, end quote. The testimony about why the state police brought the investigation to the FBI was I don't know why. Sometimes we work together. There was testimony that state police investigate state crimes. The FBI investigates federal crimes. Sometimes they overlap. Sometimes they don't. What about this overlapping jurisdiction idea, though? The two sovereigns have jurisdiction in drugs. Two sovereigns have jurisdictions in firearms. Some are obviously purely one or the other. This civil rights area is something that there is a possibility of being prosecuted by both sovereigns, correct? There is a possibility of being prosecuted for most crimes by both sovereigns. For instance, Hobbs Act robbery, as this court pointed out when analyzing the same test, is also prosecuted in state court as robbery. They don't call it the Hobbs Act because that's a federal act. As the Ninth Circuit pointed out in a very similar decision, also about a correctional guard, also about an assault on an inmate, also about falsifying a statement in his report, the Ninth Circuit found the evidence there presented by the government was insufficient. You're talking about the Johnson case? I am. The government's brief analogizes this case to the exceptions put forth at the end of Johnson saying, well, if there was evidence that they frequently investigated prisons, or if there was evidence that particular assaults are routinely investigated by the federal government, or evidence that the federal investigators routinely worked with these prison officials, we don't have that here. And the government's trying to draw too much from the phrase, we work with state and locals a lot by an FBI agent, which isn't even specific to the state of Illinois. We do know there was a federal investigation. We do know that, for example, an FBI agent attempted to talk to Mr. Irvin, and Mr. Irvin was not responsive. And that was prior to his passing away. So part of our analysis will have to be, Fowler leaves us with this reasonable likelihood standard. That doesn't necessarily mean, as I understand it, that the FBI investigation must have occurred at a certain time. So if we do have this federal involvement, and this is an issue, this element, we've got a pattern in jury instruction on it, our circuit does. If this element is something then that was before the jury, how was the quantum of evidence insufficient for the jury to reach that conclusion? Sure. So the quantum of evidence was insufficient, first pointing to there was a federal investigation, and that they spoke to Mr. Irvin before his death. All of that happened after the acts alleged in the indictments of Mr. Scheffler falsifying a report or lying to state police. There was no federal investigation at that time. So although the federal investigation didn't happen years later, that's not the test. It's whether it was reasonably likely at that time. And the only reason there was a federal investigation that's in the trial record is because the state police came to the FBI and asked them to participate. Why did they do that? The testimony was, we don't know. So, Mr. Newhall, when you're talking, when you're focusing on the timing, the test is not, so the defendant doesn't have to have the knowledge or the intent at the time that it's reasonably likely for the federal law enforcement office to get involved. Is that correct? That's correct. And so if that's the case, then why isn't a later federal investigation relevant to the inquiry of reasonable likelihood? Because under 401, it does prone to make a fact more likely than not true, right? I agree that it's relevant. I just disagree that it's sufficient. Well, so I think the trouble I'm having with your argument is the sentence in Fowler that the government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical, right? And so on the one hand, you think a phrase like reasonable likelihood would carry some weight. But then you have that statement in Fowler, which basically, to me, means it has to be more than simply possible. It has to be more than remote, outlandish, or simply hypothetical. Given the fact there was an investigation here later on and the concurrent jurisdiction that Judge Brennan mentioned, why doesn't that meet the test? Because in every case where this arises, there is a federal investigation. That's why we end up in federal court. So if the federal investigation were enough, Fowler would be a dead letter. And this court's decisions applying Fowler and vacating convictions under Fowler would never have been written. The Ninth Circuit's decision in Johnson vacating a conviction under very similar circumstances would never have been written if the existence of federal investigation were enough. It's relevant that an investigation happened. But is that sufficient evidence to show there was a reasonable likelihood at the time that there would be a federal investigation when at the time there was an investigation of state crimes in a state prison by a state guard against a state inmate? Mr. Newhall, forgive me, but I take it that it is uncontroverted, both at trial and now on appeal, that Mr. Scheffler was not telling the truth when he wrote in his report, quote, inmate Irvin was turned over to staff for proper placement without further incident. And if one were to step back and look at the big picture like jurors do, might, must, you have first a horrific beating of a prisoner. Second, overwhelming evidence that Mr. Scheffler at best stood by and at worst participated. And third, a report by Mr. Scheffler that says we turned him over to the segregation unit without incident. Can we really say, in your view, that no reasonable jury could convict looking at that big picture? Yes, we can say that, and this court should say that, because what Your Honor didn't mention, Judge Rogner, is that the jury also had to find there was a reasonable likelihood of a federal, not a state, investigation. And at the time he's writing the report, it is a state correctional report. At the time he's talking to the state police, he's talking to state police about state crimes in a state institution. And there was simply no evidence given about why the FBI became involved other than state police brought it to them for reasons not stated. There was no evidence. You know, I'm sorry. Please continue. No, please, Judge Rogner. No, you finish your thought. There was no evidence of the type described in Johnson, which really factually is very much on all fours with this case, because it's another correctional officer, it's another inmate assault, and it's allegations, conviction for falsifying a report. And yet we don't have the kind of evidence that the United States v. Johnson, the Ninth Circuit said, would be sufficient, like evidence of frequent cooperation with that institution or evidence of a policy of investigating inmate assaults. None of that made it into this record. You see, one problem is that the government has a light burden. The government's only burden here was to show that when Scheffler engaged in misleading conduct with the intent to hinder, delay, prevent the communication of information regarding the offense, that there was a reasonable likelihood that the communication would reach a federal officer, because that is Johnson. And I am trying to get past the fact that when something very serious happens to an inmate and a correctional officer writes a report about it, there is an extremely good chance that that report will go to some law enforcement agency for investigation. Whether it be state or federal, it is hard for me to get past the fact that he could not have known that there was a reasonable likelihood that the report would indeed go to a federal agency. And I will agree that it would have been better had the government put on more evidence that more specifically demonstrated that he must have been aware that his false reports would get to federal law enforcement officers, you know, to federal law enforcement officers. But I think you see our problem here. I see the issue you're raising. I think the key phrase that you said was there would be an investigation, whether it be state or federal. And the problem that the government has is they have to prove it would be a federal investigation. Certainly, Mr. Shaffer, we knew there would be a state investigation. That's not an issue. But a state investigation is insufficient to prove this point. I also think your honors have to step back and make sure that you're looking at this as a lay person, as the jury is, not as someone who has experience and has seen many cases, which I think is what the Ninth Circuit did in Johnson. I'm very low on time. If I may, I do want to talk about the motions for new trial. Sure. The government committed three principal errors in its rebuttal argument, first by attacking defense counsel and drawing attention to a phrase from opening argument that the jury had been instructed to disregard. And I simply disagree with my colleague on the other side that there's ever an appropriate time to draw the jury's attention to something that the judge has instructed them to disregard. And I don't think that it's ever appropriate to then try to attack the defense attorney's opening argument when you're there to argue about whether you've met your burden of proof beyond a reasonable doubt. Second, the government asserted that there was no assault on D-Wing. And that's just clearly contrary to the evidence. And I do want to take a moment and clarify, because I think that the briefs have talked past each other a bit, and the government has made a good point in that the defense has talked about all the assaults in R-1 as sort of a group. And the government is saying, well, we want to draw a distinction between D-Wing and R-1. So the layout, R-1 is a large building shaped like an X. And each leg or arm of the X is a wing, A, B, C, and D. And it has a central hub. And that's depicted in the trial exhibits. The assault of Mr. Irving began in the leg, the D-Wing. And as he was brought out, continued in the hub. And the exit from the building is through a vestibule that is pictured on, I believe it's page 15 of our brief, where there was the first of the most serious assaults in the vestibule. But there were assaults throughout. And in particular, I would point you to page 5 of our brief, where we summarize the testimony and statements of inmate Garcia Rios, who saw inside the portion that everyone agrees is D-Wing, and saw the assault of Mr. Irving. He said, they're beating up an old man, totally unnecessary, picking him up and dropping him. He was saying this in real time to his loved one on the phone. He has no motive to lie about any of it. So, in light of that evidence, for the government to get up and rebuttal and assert there was no assault on D-Wing was contrary to the evidence. Is the confusion, the speaking past each other there a matter of location, not a matter of whether a beating took place? It is a matter of location. The government is arguing that when the prosecutor said, on D-Wing, he meant literally just in that portion that's D-Wing. The defense is asserting that the whole assault as it's coming out of D-Wing was the assault that the prosecutor was— Why is the argument about D-Wing not waived? Why is it not waived? I think because it was raised in the motion for new trial that the government in rebuttal was unfairly disparaging defense counsel in part because he was denying, asserting that assault on D-Wing never happened when in fact that statement by defense counsel was supported by the evidence. Would you like to reserve the remainder of your time? Thank you. Very good. Thank you, Mr. Newhall. We'll now hear Mr. Glaser from you on behalf of the government. May it please the court, William Glaser for the United States. I'd like to start with a fowler issue. And as I think the court has already focused on, the government's burden here is not high. On sufficiency review, we have to show only that a reasonable juror could conclude that at the time that the defendant made his statements in his report and to the Illinois State Police, that there was a reasonable likelihood that those statements would reach a federal officer. Now, our court has only—it looks like only published Snyder. Correct. Snyder, different facts. It sounds like the district court in Snyder was relying on the fact that the state and local authorities—or the state and federal authorities shared office space. That's a pretty low quantum compared to FBI agent's testimony, FBI attempting to speak to the victim. But we're still in this difficult position of having to determine whether there was a sufficiency. It's a quantum. Correct. Correct, Your Honor. I think another distinction between this case and Snyder is that in Snyder, the federal offense only happened—the federal offense happened after the obstructive conduct. So the obstructive conduct there was killing the potential witness to what this court considered to be an otherwise local crime. And it was at that point after the killing that the federal crimes—I mean, arguably there was a Hobbs Act robbery previously, but it was only after the killing that the federal government became involved, and ultimately there were charges brought for, I believe, Hobbs Act and 924C or J. So there, I think the crime was different in nature after the killing, and I think that was important. Whereas here, the crime stayed the same. So there was no change in the crime. It was a crime over which there might be concurrent jurisdiction at the time of the misstatements to the Illinois State Police. So I think that's another distinction. But focusing here on the evidence that we have, and admittedly, we could have called a witness to sort of check the box a little more clearly and say, you know, this is the kind of crime that always gets prosecuted by the federal government or frequently gets prosecuted by the federal government. But I think we came close. And so the evidence that we have is, first of all— Forgive me, in what way do you think you came close? Because, you know, the government could have easily put in evidence about other times that federal officers investigated prison or guard misconduct at the prison. And it is worrisome that the government did not specifically, it would seem, demonstrate that he had to have been aware that his false reports would get to federal law enforcement. Well, Your Honor, just to correct one thing. I think the defense and the government agree that he didn't actually have to be aware of it, have knowledge or intent because of that other provision in Section 1512. The question—he had to have intent to prevent the communication to a law enforcement officer. But with respect to the federal, the fact that it was a federal officer, there only needed to be a reasonable likelihood. So we agree with the defense. That's an objective question. And on that objective question, it's true that we didn't, in so many words, have an FBI agent say that there was a reasonable likelihood at the time or this is the kind of thing that we would always investigate. But we have, I think, six different pieces of evidence that were sufficient for the jury to reach that conclusion. If I may, I'd like to list those. So the first is that this was an incident report that was on an official Department of Corrections form that was reviewed and preserved. So these are the kinds of forms that are preserved for subsequent investigation of whatever nature. And I think there was at least a reasonable likelihood that they could lead to a federal investigation. Second, the DOC standards required compliance with, quote, state and federal laws. And each officer, including Lieutenant Scheffler, took an oath to support the Constitution of the United States and to comply with federal law. Third, the FBI agent explained on the stand that deprivation of rights under color of law is a federal offense. Fourth, another FBI agent testified, we work with state and locals a lot, particularly on areas where there's an overlay between both systems. Fifth, there's the timing component here. The Illinois State Police contacted the FBI in early June 2018 before Mr. Ervin had even passed away. So very quickly, the Illinois State Police recognized that this was something that might implicate federal concerns. And then sixth, I think this is important, although we have to be careful about it, ultimately these things did reach the FBI. They did reach federal investigators. Now, I agree with the defense that we can't simply say because this ultimately became a federal prosecution, there was therefore in every case a reasonable likelihood at the time that they would reach federal officers. But I do think the fact that they reached federal officers is an important consideration. Because that happened in sort of the natural course of events. There wasn't something surprising or remote, outlandish, or simply hypothetical, to use Fowler's language, that happened to turn this into a federal investigation. It was something that happened in the natural progression of things. And I think this court can consider that fact, the fact that these did ultimately reach federal officers in the usual course of things, to conclude that at the time the statements were made, there was at least a reasonable possibility that they would in fact reach federal officers. Can we also consider the gravity of the case or the extent of harm? So, in other words, if the incident involved a slight injury to the inmate versus something of the magnitude here, is that something that we're allowed to consider in trying to figure out whether or not it was reasonably likely that federal enforcement officers would be involved? Your Honor, yes, I think that is something this court can consider. I would note that there was not specific testimony by a government witness, by an FBI agent, about the federal government investigates more serious crimes versus less serious crimes. So I wouldn't want to lean too heavily into that in terms of the evidence that we elicited in this case. But I think that everything we've been talking about sort of is reflective of that common sense understanding that this was the kind of case that federal investigators often get involved in and in fact did get involved in here. What about the sequence? I'm sorry. Go ahead, Judge Ruebner. Is there anything at all, anything at all, in this record about whether Mr. Scheffler had seen other federal law enforcement investigations in the prison of either inmate or guard malfeasance in the 18 years that he had worked there? Your Honor, none that I can recall from the record. But I don't think that matters because of the thing I mentioned earlier, the fact that the government doesn't have to prove a specific mental state with respect to the federal officer. It only needs to show a reasonable likelihood, which is an objective standard. So taking Mr. Newhall's point about the juror's perspective, if they might be considering the gravity of the offense, are they also allowed to consider the sequence of events in that Scheffler files a report of the day of the incident, Scheffler gets investigated the day after the incident, then we get into these calls that he's giving to Banta and various inferences that can happen as a result of how he reacted. Is that all something that the jurors could consider on that third element or not? Yes, Your Honor. I think it is. I wouldn't want to assign too much probative weight to it, but I do think the fact that he continued to interact with his co-conspirators in a way that was indicative of a cover-up suggests certainly strong evidence of his intent to obstruct an investigation. And I don't think there's any dispute that he intended to obstruct an investigation. I'm not sure that it moves the ball very far in terms of whether that investigation was reasonably likely to be federal, but on sufficiency review, we think that the evidence in the record here is enough for this court to conclude that there was a reasonable likelihood at the time the statements were made that they would ultimately reach federal officers. Again, they did reach federal officers, not because of an unusual circumstance, something that would be remote, outlandish, or hypothetical, but in an ordinary and expected way. If I may turn now, unless the court has any questions on the count four. I was going to turn to you, but I'm not sure you want to be turned in the direction I want to. Mr. Scheffler argues that the government admitted that its plan was to argue to the jury that Mr. Scheffler's silence was not just evidence that he breached his proffer agreement, but was evidence of his guilt. What is your response to that? Your Honor, the prosecutor certainly made that statement in a sidebar when the defense was pressing. The prosecutor said, it's certainly evidence of consciousness of guilt. And the defense attorney asked, are you going to argue that? And the prosecutor said yes, but ultimately, the prosecutor did not argue that. The prosecutor never made, certainly not in the initial part of the closing, and not even in rebuttal, did not make a consciousness of guilt argument. Instead, the only comments on any kind of silence, to the extent we can call it silence, was an argument that Mr. Scheffler had opportunities to correct the record. And that was directly responsive to the defense argument that the government was never satisfied, that Mr. Scheffler repeatedly gave the same story to the government, and that the government wanted him to keep correcting the record, and asked how many times does he have to do it, every month, every day, every hour? And it was only in response to that that the government mentioned that he had the opportunity, both before and after the indictment, to go back and correct the record. So I agree, the prosecutor indicated that he was going to make a broader argument, but he never did. So I don't think that we have a problem with that statement. If I can turn to the arguments that counsel addressed here, I think, first, the disparaging of defense counsel. Whether this court thinks that it was advisable or not is not the question. The question is whether those statements on rebuttal rose to the level of a due process violation and rendered this trial fundamentally unfair. And although it might have been better if the prosecutor had not begun immediately talking about the defense opening statements and the sustained objections there, this was a fairly tense trial. The defense had gotten up in closing and said, how did they get it so wrong? Accused the government of selecting the wrong person. Should have prosecuted the majors and the warden of the institution. And for one reason or another, the prosecutor decided to focus on the fact that the defense arguments weren't evidence. I think that was appropriate, certainly, to say defense arguments aren't evidence, and then reminded the jury of those sustained objections in the opening statement. I think there's just no possibility that the jury convicted here in light of the overwhelming evidence based on those statements by the prosecutor as opposed to the evidence itself. So that was not prosecutorial misconduct, certainly not the kind that would affect the trial's outcome. Second trial is 15 days long, correct?  Do we know how long the first trial was? Your Honor, I know and I knew at one point and I've forgotten, I'm sorry. Shorter or longer? I believe it was around the same length, perhaps. No, I believe it was a little bit longer. There were two defendants in that case, so Banta was still in the trial at that point. And do we know it was the same lead counsel in both trials? It was. And same defense counsel? It was. Okay, thank you. Yes, same defense counsel for Scheffler. Obviously Banta's counsel was involved in the prior trial as well.  I'm going to go back a bit. You know, we know, we all know that an attorney should never attack opposing counsel personally. Yes, Your Honor. And although it is true, of course, that the district court sustained objections, but after, I mean, and then, if I recall correctly, the prosecutors stated that there's nothing more unsupported or discrediting of an attorney's statements than when the court instructs a jury to disregard them. Surely, that was a very prejudicial statement to have made. Your Honor, I don't think it's prejudicial. I don't, I'm not, I wouldn't necessarily say it's accurate, that that's the most discrediting thing that could ever happen to defense counsel, but it's not prejudicial. And here's the reason. The district court repeatedly instructed the jury not only that counsel's arguments weren't evidence, but also that objections weren't evidence. And it's just not, it's highly unlikely that the jury would decide after this, again, a trial where there was a lot of intense back and forth between the prosecution and the defense. There was, you know, many times the objections were argued in front of the jury. So the jury knew that there was, you know, there was a, this was an intense fight between the prosecution and the defense. In that context, I don't think it was likely that the jury would listen to that statement and conclude from it that it ought to convict Mr. Scheffler, not based on the evidence, but solely based on the fact that the district court had sustained three objections in the opening statement. If I may address the other claim that Mr. Scheffler's counsel mentioned, the assault on D-Wing. I think our, as our brief clarified, there was a conflation in the opening brief between the actual D-Wing and the entryway, and I take the defense to now be arguing that sort of, that really there's an assault on R-1 is their main argument, that somewhere in that building, whether on D-Wing or in the entryway, there was an assault. And that would be perhaps a good argument if it weren't for the fact that the government clearly distinguished throughout the trial between those two locations. And so when the government in rebuttal said there was no assault on D-Wing, that was completely consistent with everyone's understanding, including the jury's understanding, of what happened. The government repeatedly admitted that there was an assault. There was some kicking and punching in the R-1 entryway. The government argued that wasn't the kicking and punching that led to the fatal injuries, and I think the evidence strongly supported that view. But the defense would have this court find prosecutorial misconduct based on the government's accurate statement, or at the very least a fair inference from the record, that there was no assault on D-Wing itself. The prosecutor told the jury, we all watched the video, there was no assault on D-Wing. That was a reasonable inference to be drawn from the evidence, and in fact was consistent with the testimony of the vast majority of witnesses, including three defense witnesses. I believe there were seven witnesses who testified that they saw no assault on D-Wing. So it was not prosecutorial misconduct or a misstatement of the evidence to argue that reasonable inference to the jury. I'm happy to answer any other questions. Do you think that argument was waived? Yes, Your Honor. It was not preserved because the only objection that the defense made was in the post-trial motion related to a claim that the prosecution had unfairly attacked the defense by making an argument about D-Wing. So it wasn't this argument. It wasn't a misstatement of the evidence kind of argument. It was an unfair attack on the defense. But even if this court were to consider it preserved, it certainly didn't rise to the level of prosecutorial misconduct. Thank you, Mr. Glazer. Thank you. We'll now hear rebuttal argument, Mr. Newhall, from you. We'll give you a full three minutes. Thank you, Your Honor. Very briefly, I do want to address the right to silence argument. The government agrees that the prosecutor specifically said he was going to make this argument, and it's undisputed that in closing he told the jury he had months after indictment to come forward, that there's no, I think, understanding of that phrase that would not be a comment on the right to silence and telling the jury that he had a duty to come forward when, in fact, he had a right to remain silent and an attack on the remaining silent after the indictment. Wasn't his argument, though, I mean, that was directed towards the obstruction issue, and wasn't the argument that he obstructed in this way and, by the way, he never kind of tried to, if it was kind of an honest mistake, he never tried to correct any of it? I'm not sure what. I thought it was more to deal with the issue of kind of intent and whether he knowingly misrepresented as opposed to just kind of accidentally misrepresented, and then he had an opportunity to try to correct that. I don't think so, Judge Lee. I think that the prosecutor was responding to an argument about how many times does he have to come forward. He came forward. You saw his interviews. The jury heard recorded interviews. They heard testimony of unrecorded interviews. They talked to state police. They talked to the FBI multiple times. They came forward multiple times. The argument was how many times does he have to come forward and make these statements until they're satisfied, and then the prosecutor came forward and said, well, why didn't he come forward after indictment? He had months after indictment to come forward and correct the record, and there's just no understanding of that phrase that's not an attack on his right to silence after being indicted, which is what the prosecutor said he was going to do earlier in the trial. So it's been admitted on that Juror 31 issue? Yes. Or we can rely on the brief. No, I would like to address Juror 31. So there is a great deal of deference to the trial judge in credibility determinations, but I think our argument doesn't hinge on the trial judge's credibility determinations of Juror 31. I think that we would say objectively when you have this many signals of trouble, when you have an outside person in that case, it was Mr. Scheffler's spouse come forward and say she had overheard Juror 31. Juror 31 denies it, and then the government comes forward and says we have information that someone who has been advocating with the media for conviction who was a juror in the previous trial is texting Juror 31's wife, and Juror 31 is again denying that. At that point, it was unreasonable not to strike Juror 31, and that does require a new trial. Thank you, Your Honor. Thank you, Mr. Newhall. Thank you, Mr. Glazer. The case will be taken under advisement.